UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAUNA M. MOTE, DEBORAH CLARK,
CARLOS GRAY-LION, BRENDA BARANIAK,
KAREN STREET, MERLYN STREET,
LEE BENTON, by his next friends RONALD M.
BENTON and MARION BENTON, J.N., a minor,          Case Number 16-11546
by his next friends DANIEL and MARY JANE          Honorable David M. Lawson
NELSON, ANN ARBOR CENTER FOR
INDEPENDENT LIVING, INC., and
JENNIFER KUNDAK,

                 Plaintiffs,
     v.

CITY OF CHELSEA, CHELSEA DOWNTOWN
DEVELOPMENT AUTHORITY, MICHIGAN
DEPARTMENT OF TRANSPORTATION, and
WASHTENAW COUNTY ROAD COMMISSION,

                 Defendants,

and

CITY OF CHELSEA,

                 Third-party plaintiff,
     v.

WASHTENAW COUNTY ROAD COMMISSION,

                 Third-party defendant.
_____/

**FIRST CONSENT DECREE**

        On May 19, 2017, the Court issued an opinion and order granting a joint motion by the

plaintiffs and defendants City of Chelsea and Chelsea Downtown Development Authority (DDA)

to approve their proposed consent decree accomplishing a partial settlement of the plaintiffs' claims

against those defendants.  On July 6, 2017, the parties submitted to the Court a proposed first consent decree embodying the terms of their partial settlement.

Accordingly, pursuant to the stipulations and the consent of the parties as set forth below, all of the following is **ORDERED AND ADJUDGED**.

## I. STIPULATIONS

The parties agree and stipulate as follows.

1.      On April 28, 2016, the plaintiffs filed a class-action complaint against the City of Chelsea, Michigan, ("Chelsea"), Chelsea's Downtown Development Authority, ("DDA"), and the Michigan Department of Transportation ("MDOT") alleging violations of Title II of the Americans With Disabilities Act (ADA), Section 504 of the Rehabilitation Act of 1973 and the Michigan Persons With Disabilities Civil Rights Act (PWDCRA).

2.      On July 29, 2016, defendant City of Chelsea moved for leave to file a third-party complaint against the Washtenaw County Road Commission ("WCRC"), and the Court granted that motion on August 1, 2016.  Chelsea filed its third-party complaint on August 5, 2016.  The plaintiffs later filed an amended complaint that also named WCRC as a defendant.

3.      Defendants Chelsea and the DDA deny any violations of federal or Michigan law.

4.      The plaintiffs and defendants Chelsea and the DDA entered into significant settlement negotiations and have reached an agreement to resolve a portion of the lawsuit.

## II. EXHIBITS

The following exhibits, the full texts of which are available online, are incorporated herein by reference, and the parties agree to refer to them for further guidance on the interpretation and application of the terms of this consent decree where they are cited.  The parties also agree to follow

the guidance provided by those documents, unless anything stated in them is expressly contradicted by the terms of this consent decree.

1.      Exhibit 1 is the Department of Justice (DOJ) / Department of Transportation (DOT) Joint Technical Assistance on the Title II of the Americans With Disabilities Act [ADA] Requirements to Provide Curb Ramps when Streets, Roads, or Highways are Altered through Resurfacing, which was published on July 8, 2013. It is available online at http://fhwa.dot.gov/civilrights/programs/doj_fhwa_ta.cfm.

2.      Exhibit 2 is the Questions and Answers Supplement to the 2013 DOJ / DOT Joint Technical Assistance, which was published on December 1, 2015. It is available online at http://www.ada.gov/doj-fhwa-ta-supplement-2015.html.

3.      Exhibit 3 is the USDOJ ADA Parking Compliance Brief, which was published in December 2015. It is available online at http://www.ada.gov/restripe.pdf; https://adata.org/factsheet/parking.

The parties also agree as a general matter that the Technical Assistance Manual of the Department of Justice ("TAM"), is persuasive authority as to the meaning of provisions in the ADA, unless it is plainly erroneous or inconsistent with the ADA's regulations. *See Noel v. New York City Taxi & Limousine Commission*, 687 F.3d 63, 69 (2nd Cir. 2012); *Innovative Health Systems, Inc. v. City of White Plains*, 117 F.3d 37, 45 n.8. (2d Cir. 1997).

### III. DEFINITIONS

The following terms and phrases shall be understood and applied throughout this consent decree according to the definitions set forth below.

1.      *Facility.*  The term "facility" shall have the meaning set forth in 28 C.F.R. § 104. Among other things, "facilities" include "roads," "walks," "pedestrian walkways," and "parking lots." *Ability Center of Greater Toledo v. City of Sandusky*, 385 F.3d 901, 904; 904 n.3, 911 n.10 (6th Cir. 2004) (quoting 28 C.F.R. § 35.104; 28 C.F.R. § 39.103; USDOJ Title II Technical Assistance Manual §§ II-5.3000, II-6.6000).

2.      *Alteration.*  The terms "alter," "altered," and "alteration" shall be understood to comprise any change to a building or facility that affects or could affect the usability of the building or facility or any portion thereof.  Alterations include, but are not limited to, remodeling, renovation, rehabilitation, reconstruction, historic restoration, resurfacing of circulation paths or vehicular ways, changes or rearrangement of the structural parts or elements, and changes or rearrangement in the plan configuration of walls and full-height partitions. *See* 2010 ADA Standards Definitions § 106.5. The parties agree to rely upon the incorporated Exhibits 1, 2 and 3 for additional specific guidance as to the meaning of this term.

3.      *By, on behalf of, or for the use of.*  The phrase "by, on behalf of, or for the use of" shall be understood to comprise any construction or alteration where Chelsea or the DDA, prior to or during the alteration, expend public funds, contract for, or otherwise expend resources (engineering, planning, design, inspection, approval, etc.), or where, after completion of the alteration, they exercise full or partial control, regulation or other jurisdiction over the facility after it is constructed or altered.  This phrase, however, shall be interpreted consistently with the limitations set forth below regarding Main Street (State Route 52) and Old U.S. Highway 12.

4.      *To the maximum extent feasible.*  The phrase "to the maximum extent feasible" shall have the meaning set forth in 28 C.F.R. § 36.402(c).  This phrase applies to the occasional case

where the nature of an existing facility makes it virtually impossible fully to comply with applicable accessibility standards through a planned alteration.  In these circumstances, the alteration shall provide the maximum physical accessibility feasible.  Any altered features of the facility that can be made accessible shall be made accessible.  If providing accessibility in conformance with this section to individuals with certain disabilities (e.g., those who use wheelchairs) would not be feasible, the facility shall be made accessible to persons with other types of disabilities (e.g., those who use crutches, those who have impaired vision or hearing, or those who have other impairments).

5.    *Other sloped area.*  The phrase "other sloped area" means an accessible transition with a running slope not exceeding 5 percent from a sidewalk to road surface.  By keeping the term "other sloped area," the DOJ concluded that 28 C.F.R. 35.151(i) should acknowledge that there are times when there are transitions from sidewalk to road surface that do not technically qualify as "curb ramps" (sloped surfaces that have a running slope that exceed 5 percent). Therefore, the DOJ decided not to delete the phrase "other sloped areas."  *See* USDOJ Guidance on the 2010 Standards for Accessible Design, 28 C.F.R. Part 35, App. A to Part 35, at 27-28 (September 15, 2010).

6.    *Technically infeasible.*  The phrase "technically infeasible" means, "[w]ith respect to an alteration of a building or a facility, something that has little likelihood of being accomplished because existing structural conditions would require removing or altering a load-bearing member that is an essential part of the structural frame; or because other existing physical or site constraints prohibit modification or addition of elements, spaces, or features that are in full and strict compliance with the minimum requirements."  2010 ADA Standards § 106.5.

## IV. LIMITATIONS

1.      Limitation Relating to Putative Class.  This consent decree is enforceable only by the named plaintiffs.  The named plaintiffs have filed this case as a putative class action.  All of the named plaintiffs, as well as defendants City of Chelsea and its DDA fully intend that the final resolution of the lawsuit will occur after a putative class has been certified.  Nevertheless, solely for purposes of this first consent decree and partial settlement of claims, the plaintiffs and defendants Chelsea and its DDA understand that this first consent decree shall be enforceable only by the named plaintiffs.  The parties agree that the named plaintiffs fully can enforce this first consent decree, and that there is no need at this early stage of the lawsuit to engage in the multi-month process of class certification, class notice, and all that involves.  At the appropriate time in the future, the plaintiffs and defendants Chelsea and its DDA intend to file a joint motion for class certification.

2.      Limitation Relating to MDOT and SR 52.  Although the plaintiffs have named MDOT as a defendant, MDOT is in no way a party to this first consent decree and partial settlement. Specifically, MDOT's State Route 52 runs from the north border to the south border of the City of Chelsea, and is also designated as "Main Street" throughout Chelsea. The sidewalks along SR 52-Main Street and the connecting pedestrian crossings and on-street parking are in the MDOT right-of-way.  The plaintiffs claim that Chelsea, DDA, and MDOT are jointly liable for some or all of those items.  However, the parties hereby expressly agree to hold any decisions as to these items for a future time, to allow time for negotiations among the parties and with MDOT.  While entering into this consent decree, the plaintiffs and defendants Chelsea and its DDA expressly reserve all claims, rights and defenses regarding those intersections, adjacent sidewalks, and on-street parking

along SR 52-Main Street, and nothing in this consent decree affects in any way any parties' claims or defenses relating to those items.

3.       Limitation Relating to Defendant WCRC and Old U.S. Highway 12.  Although Chelsea has named WCRC as a third-party defendant, and the plaintiff has filed an amended complaint naming WCRC as a defendant, WCRC is in no way a party to this first consent decree and partial settlement.  Specifically, WCRC's Old U.S. Highway 12 runs from the west border to the east border of the City of Chelsea.  The sidewalks and the shoulders where there is no accessible sidewalk along Old U.S. Highway 12 and the connecting pedestrian crossings are in the WCRC right-of-way. The plaintiffs claim that defendants Chelsea, MDOT, and WCRC are jointly liable for some or all of those items.  However, the parties hereby expressly agree to hold any decisions as to those items for a future time, to allow time for negotiations among all of the parties.  While entering into this consent decree, the plaintiffs and defendants Chelsea and its DDA expressly reserve all claims, rights and defenses regarding those intersections, adjacent sidewalks and relevant shoulders along Old U.S. Highway 12, and nothing in this consent decree affects in any way any parties' claims or defenses about these.

## V. FUTURE CONSTRUCTION AND ALTERATIONS

1.       Future Construction and Alterations Under 28 C.F.R. §§ 35.151(a)-(c).  The City of Chelsea and its DDA shall ensure beginning January 1, 2016 and thereafter that each facility or part of a facility altered  by, on behalf of, or for the use of Chelsea or its DDA in a manner that affects or could affect the usability of the facility or part of the facility shall, to the maximum extent feasible,  be altered in such manner that the altered portion of the facility is readily accessible to and usable by individuals with disabilities.  The term "readily accessible to and usable by individuals

with disabilities" shall mean that the alteration is in strict compliance with the ADA 2010 Standards. The 2010 Standards are available online http://www.ada.gov/2010ADAstandards_index.htm. 28 C.F.R. § 35.151(c).

2.      Future Construction and Alterations Under 28 C.F.R. §§ 35.151(i)(1)-(2). Beginning January 1, 2016, and continuing through the life of this consent decree, defendant Chelsea shall ensure that when streets, roads, or highways are newly built or altered, ramps or sloped areas shall be installed wherever there are curbs or other barriers to entry from a sidewalk or pedestrian path, and where the direction of a sidewalk or pedestrian path intersects a street, road, or highway. Likewise, when new sidewalks or pedestrian paths are built or are altered, curb ramps or sloped areas shall be installed wherever sidewalks or pedestrian paths would, if not for a curb or other barrier, such as a strip of grass between the sidewalk and the street, road or highway, intersect streets, roads, or highways.  28 C.F.R. § 35.151(i); USDOJ Title II Technical Assistance Manual § 6.6000.  Generally, this will mean that where pedestrian walks exist, there will be six curb ramps or other sloped areas at each "T" intersection, and eight curb ramps or other sloped areas at each "+" or "plus" intersection.  Cost and other undue burden shall not be a defense for a failure to comply with the requirements of this section.

3.      Special Exception for "Jogged Intersections."  As with other "plus" intersections, a total of eight curb ramps shall be installed at jogged intersections, that is, where a road does not align with itself when intersecting another road.  However, jogged intersections should not have two ramps at each of the four corners.  Instead, the ramps should be placed so that pedestrians are encouraged to walk across the straight road on either side of the jogged road, not between the two portions of the jogged road.

4.      Prohibited Reduction of or Lesser Level of Accessibility.  Any alteration that decreases or has the effect of decreasing the accessibility of a facility below the requirements for new construction at the time of the alteration is prohibited.  2010 ADA Standards § 202.3.1.  No facility alteration or maintenance work shall result in a lesser level of accessibility.  *See* 28 C.F.R. § 35.133(a); Exhibit 1 at Q&A Nos. 11-12.

5.      Road or Walk Alteration Project Scope and Limits.  The plaintiffs and defendant Chelsea are mindful of the principle that "Public entities should not structure the scope of work to avoid ADA obligations to provide curb ramps when resurfacing a roadway.  For example, resurfacing only between crosswalks may be regarded as an attempt to circumvent a public entity's obligation under the ADA, and potentially could result in legal challenges."  Exhibit 1, Answer No. 3.  Therefore, purely for settlement purposes, the plaintiffs and Chelsea agree that whenever Chelsea alters or resurfaces a Chelsea street, road, highway or sidewalk which intersects with a Chelsea street, resurfacing reaches into the one-third (1/3) of the block closest to the next intersection.  Otherwise, any such partial alteration or resurfacing only shall be performed to alter those limited areas which are subject to excessive wear at intersections.  Chelsea agrees and covenants that it will not engage in any partial alteration or resurfacing of such blocks for the purpose, intent or design of avoiding or delaying the performance of its obligations to repair or install curb ramps or other sloped areas at the Chelsea intersection.

6.      Challenges That Full Accessibility is "Technically Infeasible."  Where existing facilities are altered, each altered element or space shall comply with the 2010 ADA Standards.  *See* 2010 ADA Standards § 202.3.  In alterations, where the defendants assert that full and strict compliance is "technically infeasible", the alteration shall comply with the requirements to the

maximum extent feasible. *See* 2010 ADA Standards § 202.3.2. The parties agree to use the following procedure regarding any claims of technical infeasability. If, during the course of construction, alteration or resurfacing after January 1, 2016, in the rare circumstance that defendants Chelsea or the DDA believe that any particular facility or portion of a facility prohibits construction or alteration in full compliance with the 2010 ADA Standards, then the defendant shall notify plaintiffs' counsel in writing via certified mail and via email of such finding. The written notification shall list the engineer(s) who have reviewed the facility or portion of the facility, the location of each facility, and the Standard or measurement(s) which allegedly cannot be met. The notification shall include a statement of all reasons why compliance is technically infeasible and shall include all supporting materials on which the defendant relied in making its evaluation. The notification also shall state how the defendant proposes to deviate from the Standards. Special attention shall be given to the measurements of the direct slope and the cross-slope of any walkway, crossing, curb ramp or ramp, and the juncture of the pedestrian crossing with the ramp and the ramp with the pedestrian walkway, and the level landing at the top and bottom of each ramp. Any disputes over the technical infeasability of compliance or proposed deviations that the parties are unable to resolve by informal negotiations shall be resolved in accordance with Section XI below.

## VI. ANNUAL REPORTS OF COMPLIANCE

On or before January 31, 2018, and by the same date of each year thereafter for the life of this consent decree, the City of Chelsea and its DDA shall file a written report with the Court and with plaintiffs' counsel, listing each facility or portion of facility constructed or altered by, on behalf of, or for its use during the previous year, including the location and physical limits of each. The report shall state where new curb ramps or other sloped areas have been installed or removed as a

part of these projects. Each report will contain a sworn certification that the City of Chelsea or its

DDA has inspected each such project, and it shall contain all accurate measurements necessary to

determine if those projects have met all of the standards set forth in the paragraphs above.

## VII. REPORT OF PRIOR CONSTRUCTION OR ALTERATIONS

On or before May 1, 2018, defendants City of Chelsea and its DDA shall file with the Court

and with plaintiffs' counsel a report, separated by year, from 1992 through 2016, of each facility or

portion of facility constructed or altered by, on behalf of, or for its use during that year, including

the location and physical limits of each. The report shall state where new curb ramps or other sloped

areas were installed or removed as a part of these projects. The report shall contain a sworn

certification that the City of Chelsea or its DDA has inspected each such project, and it shall contain

all accurate measurements necessary to determine if those projects have met all standards set out in

28 C.F.R. § 151(c). The report shall include a statement of whether the Chelsea and or its DDA

believes that each of the altered facilities meet the ADA-ADAAG standards set out in 28 C.F.R. §

151(c) for the year in question, and, if they do not, how the City believes that they do not. The

Parties shall rely upon Exhibit 2 when interpreting which accessibility standard(s) were in effect at

the time of each construction or alteration project. The report also shall state whether Chelsea

intends to replace any non-conforming facility portion or to leave it in place. The listing also shall

state the location of any removed or otherwise missing ramps or other sloped areas. Any such listing

shall include a signed sworn certification that the City of Chelsea and its DDA have researched its

records and that the report is true and correct. The plaintiffs and defendants Chelsea and its DDA

shall use the report to begin discussions about which facilities or portions of facilities, if any, shall

be replaced, and a timeline. If the parties reach an agreement about replacements to be performed,

then they may file a joint motion for entry of a second consent decree and separately submit to the Court a proposed second consent decree embodying the terms of their agreement.  Any disputes about actions to be taken based on the report that the parties are unable to resolve by informal negotiations shall be resolved in accordance with Section XI below.

## VIII. RECONCILIATION OF CHANGES IN GOVERNING STANDARDS

The parties recognize that in the future, the USDOJ or FHWA might promulgate new, legally binding accessibility standards or guidelines for pedestrian routes in the public right-of-way, that may result in a situation where continuing to follow a part of this consent decree would result in a violation of the ADA or Section 504.  If, in the future, any party believes that this has occurred in full or in any part, that party shall notify counsel for all other parties via email and certified mail of the perceived issue, and include a detailed statement of what changes the party believes have occurred, all reasons the party believes the standard or guideline must apply.  The notice must include all document(s) and guidance relied upon.  Any disputes over reconciliation of the terms of this consent decree with any revised standards and guidelines that the parties are unable to resolve by informal negotiations shall be resolved in accordance with Section XI below.

## IX. ATTORNEY FEES AND COSTS

The parties have agreed upon a payment of attorneys fees and costs incurred to date. Accordingly, within fifteen days of the entry of this Consent Decree, the City of Chelsea and its DDA shall pay $25,000 to Heberle & Finnegan, PLLC, and $5,000 to Kenneth V. Klaus.  Those amounts shall constitute payment in full for all attorney fees and costs claimed at this time, subject to invoice notes, by all plaintiffs in this matter from the beginning of the case through August 1, 2016.  By paying those amounts, defendants Chelsea and its DDA in no way admit liability for any

future payments, and the plaintiffs do not waive any claims for future payments for fees and costs

that may be or have been incurred.

## X. CONSIDERATION

The parties understand that this consent decree does not resolve the entire lawsuit.  The

parties and their counsel, by entering into this consent decree, expressly agree that in exchange for

the successful completion of each of the terms of the consent decree, the plaintiffs shall forbear from

seeking preliminary injunctive relief on any issues covered herein.  The plaintiffs and defendants

Chelsea and its DDA shall continue to meet and to negotiate to attempt to resolve all other live

issues and claims that remain in the litigation.

## XI. DISPUTE RESOLUTION

All disputes between the parties to this consent decree about the application, interpretation,

or enforcement of any of its terms, or relating to the parties' performance or failure to perform any

of the obligations imposed by this decree, shall be resolved according to the following procedure.

*First*, if, after the parties have engaged in good faith informal negotiations for a reasonable length

of time, any party believes that there is a disagreement, dispute, or issue that cannot be resolved by

further informal negotiations between the parties or their counsel, then counsel for that party

promptly shall provide written notice of the dispute to counsel for all parties to this agreement.  The

notice must be sent by email and certified mail, and it must describe in reasonable detail the subject

of the dispute, all issues or points of disagreement relating to the dispute, and the party's suggestions

for resolving the dispute.  *Second*, the parties shall allow 15 days from the date of the written notice

during which they or their counsel shall meet and confer in a good faith effort to reach an agreement

to resolve the dispute.  *See* E.D. Mich. LR 7.1(a).  Finally, if at the end of that 15-day period the

parties have not reached an agreement to resolve the dispute, then any party may file a motion with the Court seeking enforcement of the agreement, or any other appropriate relief.

## XII. TERM

The terms of this consent decree shall remain in force for five years following the date of entry. The initial term of the decree shall begin on **August 4, 2017** and end on **August 4, 2022**. Any party may file an appropriate motion with the Court, at any time before the expiration of the initial term, to renew the term of the consent decree for a specified additional term of years, stating the reasons why further oversight by the Court is needed. The Court shall retain jurisdiction to enforce the terms of this consent decree throughout the initial term and any succeeding renewal terms. If any party believes, at any time during the initial term or any renewal term, that Court oversight no longer is needed, then the party may file a motion to vacate the decree or shorten its term.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: August 4, 2017

Consented to by:

s/John Mark Finnegan
Attorney for the Plaintiffs
Heberle & Finnegan
2580 Craig Road
Ann Arbor, MI 48103
Phone: 734-302-3233
Email: jmarkfinnegan@comcast.net

s/Peter C. Flintoft
Attorney for Defendants City of Chelsea
  and Chelsea Downtown Development Authority
119 S. Main St.

P.O. Box 187
Chelsea, MI 48118
Phone: 313-475-8671
Email: flintoft@keuschlaw.com

<div style="border:1px solid black; background:#cccccc; padding:10px;">

**<u>PROOF OF SERVICE</u>**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 4, 2017.

<div style="text-align:right;">

s/Susan Pinkowski
SUSAN PINKOWSKI

</div>

</div>