UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SHAUNA M. MOTE, DEBORAH
CLARK, CARLOS GRAY-LION,
BRENDA BARANIAK, KAREN STREET,
MERLYN STREET, JENNIFER KUNDAK,
LEE BENTON, by next friends Ronald M.
Benton and Marion Benton, J.N., a minor, by
next friends Daniel and Mary Jane Nelson,
ANN ARBOR CENTER FOR
INDEPENDENT LIVING, INC., and,
JENNIFER KUNDAK,

Case Number 16-11546
Honorable David M. Lawson

       Plaintiffs,

v.

CITY OF CHELSEA and CHELSEA
DOWNTOWN DEVELOPMENT
AUTHORITY,

       Defendants.

_____/

## SECOND CONSENT DECREE

On April 28, 2016, the plaintiffs filed their complaint alleging violations of their rights to accessible public pedestrian thoroughfares under the Americans With Disabilities Act. On May 19, 2017, the Court issued an opinion and order granting a joint motion by the plaintiffs and defendants City of Chelsea and Chelsea Downtown Development Authority (DDA) (hereinafter jointly referred to as Chelsea) to approve their proposed consent decree accomplishing a partial settlement of the plaintiffs' claims against those defendants. On August 4, 2017, the Court entered a first consent decree embodying the terms of the partial settlement.

The Court subsequently dismissed all of the plaintiffs' claims against former defendant Michigan Department of Transportation (MDOT). The case then proceeded to a bench trial against the remaining defendants, Chelsea, its DDA, and Washtenaw County Road Commission (WCRC).

After the trial concluded, the Court issued a judgment in favor of the plaintiffs and against defendant Washtenaw County Road Commission, directing the County to fix or replace certain inaccessible sidewalk features.  The County appealed, but while the appeal was pending the County concluded a settlement with the plaintiffs, and the appeal was dismissed.

On December 14, 2020, the plaintiffs and the City of Chelsea submitted to the Court a second consent decree finalizing certain terms of their agreement which were left unresolved by the first consent decree.  The parties agree that nothing in this second consent decree involves or affects MDOT or WCRC, and nothing in this second consent decree implicates any facilities along Main Street (SR 52), which is the only roadway inside Chelsea under MDOT's jurisdiction, or Old Highway 12, which is the only roadway inside Chelsea under WCRC's jurisdiction.

The parties further agree that the City has performed its obligations under the first consent decree of examining for ADA compliance all of its facilities, including curb cuts and designated accessible municipal parking spaces, and filing annual reports of its inspections with the Court. The City has assured the plaintiffs that it intends to bring all of these facilities into compliance with the ADA, and the parties have agreed on a timetable for certain necessary facility alterations, which are embodied in this second consent decree.  However, the parties stipulate that nothing in this second consent decree alters the continuing obligations of the parties under the first consent decree, except as expressly set forth herein.

The original consent decree also required the City to measure its curb ramps and to report the results to the Court.  Chelsea did this in its First Annual Report.  That report listed hundreds of defective curb ramps and represented that Chelsea intended to correct each of these to be set forth in a second consent decree.  Since that time, Chelsea has corrected approximately twenty of the defective ramps. The parties agree that it is obvious that Chelsea will not be able to correct the

majority of the remaining problematic curb ramps by the sunset date of the consent decree term.

Currently, Chelsea is inspecting its defective curb ramps to see which, if any, it believes may be

technically infeasible to fully repair, and it will file a report with the Court by the end of year 2021.

The parties then will negotiate a timetable for repairing the defective curb ramps, to be given force

in a third and final consent decree.  The plaintiffs and Chelsea agree that the outstanding issues

with curb ramps should not impede the entry of this second consent decree to resolve issues with

accessible municipal parking spaces and locations.

Accordingly, pursuant to the consent of the parties, the following is **ORDERED AND**

**ADJUDGED**.

I.      DESIGN   STANDARD   FOR   ACCESSIBLE   PARKING   SPACES   AND

ADJACENT ACCESSIBLE ROUTES.  The design specifications for accessible parking spaces

and adjacent accessible routes were set forth in Exhibit 3 to the first consent decree.  That is the

USDOJ ADA Design Guide 1, Restriping Parking Lots, which was published in December 2015.

It is available online at http://www.ada.gov/restripe.pdf; https://adata.org/factsheet/parking.  After

entry of the first consent decree, Chelsea restriped all of its municipal parking spaces.  Exhibit 3

to the first consent decree is incorporated herein and remains the standard for Chelsea to meet for

each designated parking space and adjacent accessible route set forth below in this second consent

decree.

II.     ACCESSIBLE PARKING SPACES BY LOCATION.  Defendant Chelsea shall

ensure that the following locations contain the following number of accessible parking spaces, and

that all modifications to that end including adjacent accessible routes are installed in compliance

with the requirements Exhibit 3 by the end of calendar year 2021.

- Municipal Parking Lot #1.  A total of four van accessible parking spaces.

- Municipal Parking Lot #2 (Common Grill).  A total of two van accessible parking spaces, and two car accessible parking spaces.

- Municipal Parking Lot #3 (North half Library).  A total of two van accessible parking spaces.

- Municipal Parking Lot #3 (South half Library).  A total of two van accessible parking spaces.

- Municipal Parking Lot #4 (CAFA).  A total of two van accessible parking spaces, and one car accessible parking space.

- Municipal Parking Lot #5 (Depot).  A total of two van accessible parking spaces, and two car accessible parking spaces.  The parties acknowledge that the Depot owns part of this lot, but that the City anticipates that the Depot will cooperate with the placement of these four accessible parking spaces.  The City will make all best efforts and will promptly notify plaintiffs' counsel via email if the Depot prohibits fulfillment of these four accessible parking spaces.  The parties reserve all legal claims and defenses as to these four accessible spaces if the specified modifications are not completed.

- Municipal Parking Lot #6 (Heydlauff's).  A total of two van accessible parking spaces.

- Police Department/City Office Parking Lot.  A total of two van accessible parking spaces.

- City Office Parking Lot.  A total of two van accessible parking spaces.

- Palmer Parking Lot.  A total of two van accessible parking spaces.

- Congregational Church Parking Lot.  A total of two van accessible parking spaces.

- Accessible On-Street Parking Spaces.  Defendant Chelsea provides on-street parking in downtown Chelsea.  Chelsea shall install five on-street van accessible parking spaces, each with an eight-foot blue hatched access aisle, and a curb cut onto the sidewalk either directly

in front or in in back of the accessible parking space.  None of these five spaces will be located on MDOT's Main Street (SR 52) or on WCRC's Old Highway 12.

Not later than December 31, 2021, Defendant Chelsea shall file a report with the Court certifying that each above parking space and adjacent accessible route has been installed and is fully compliant with Exhibit 3 to the first consent decree.  If at any time defendant Chelsea believes that it cannot install an accessible parking space or adjacent accessible route in strict compliance with Exhibit 3, Chelsea shall initiate, and the parties shall follow the dispute resolution procedure set forth at Section XI of the first consent decree.

III.     ATTORNEYS FEES AND COSTS.  Between January 2 and January 15, 2021, the City of Chelsea and Chelsea Downtown Development Authority shall pay to Heberle & Finnegan, PLLC the sum of $10,836.15 for costs and attorney fees.  This amount shall constitute payment in full for all attorney fees and costs incurred by the plaintiffs through December 14, 2021.  Payment of the agreed upon attorney fees by the defendants shall not be construed as an admission of liability for any future payments, and acceptance by the plaintiffs shall not be construed as a waiver of any claims for costs or fees that may be incurred in the future.

IV.     TERM.  The provisions of this second consent decree shall remain in force through the remainder of the term of the first consent decree, which expires **on August 4, 2022**.  Any party may file an appropriate motion with the Court, at any time before the expiration of that initial term, to renew the term of this second consent decree for a specified additional term of years, stating the reasons why further oversight by the Court is needed.  The Court shall retain jurisdiction to enforce this consent decree throughout the initial term and any succeeding renewal terms.  If any party believes, at any time during the initial term or any renewal term, that Court oversight no longer is needed, then the party may file a motion to vacate the decree or shorten its term.

V.      OTHER PROVISIONS APPLICABLE.  All other provisions of the first consent decree, except as expressly modified or disclaimed herein, shall continue in force throughout its remaining term, and those same provisions to the extent that they apply to the agreements herein, e.g., the procedure for dispute resolution in Section XI of the first consent decree, also shall bind the parties with respect to their performance under this second consent decree.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:   December 14, 2020

Consented to by:

s/J. Mark Finnegan
Attorney for the Plaintiffs
Heberle & Finnegan, PLLC
248 Aveline Street
Ypsilanti, MI 48197
Phone: 734-717-8883
Email: hffirm@comcast.net

s/Peter C. Flintoft
Attorney for Defendants City of Chelsea
  and Chelsea Downtown Development Authority
119 S. Main Street
P.O. Box 187
Chelsea, MI 48118
Phone: 313-475-8671
Email: flintoft@keuschlaw.com